## PennDOT v. Gibson

648

*Harold Kramer, assistant chief counsel,* for PennDOT.

*Kenneth C. Sandoe,* for defendant.

DOWLING, *J.,* July 9, 1991—What constitutes a motor vehicle accident?

Many terms are vague, obscure, imprecise and difficult to define. While the term "motor vehicle accident" does not seem to be so nebulous, its import in the context of the case at bar necessitates some elucidation.

Defendant, Barry Gibson, entered into an oral contract with one Jerry Calhoun to haul a backhoe on his, Gibson's, truck. As Gibson was in the process of transporting the backhoe, it struck a low bridge under which the truck was passing, resulting in damage to the backhoe. No damage was sustained by the truck itself, which did not hit anything in the road; nor were any other vehicles involved. Following a suit by Calhoun against Gibson before the appropriate district justice, charging Gibson with breach of contract and negligence, a judgment was entered for Calhoun and against Gibson in the amount of $4,037. No appeal was taken from this decision; and following the date on which the final-

ity of the judgment took effect, Calhoun recorded a transcript of it in the Court of Common Pleas.

Calhoun filed a praecipe to transmit the judgment to the Pennsylvania Department of Transportation, asking that Gibson's driver's license be suspended under the terms of the Financial Responsibility Law of Pennsylvania. This request is based upon two provisions of that law, 75 Pa.C.S. §§1771(a) and 1772, reading respectively:

"§1771. *Court reports on non-payment of judgments*

"(a) *General rule*—Whenever any person fails within 60 days to satisfy any judgment arising from a motor vehicle accident, the judgment creditor may forward to the department a certified copy of the judgment."

"§1772. *Suspension for non-payment of judgments*

"(a) *General rule*—The department, upon receipt of a certified copy of a judgment, shall suspend the operating privilege of each person against whom the judgment was rendered except as otherwise provided in this section and in section 1775 (relating to installment payment of judgments). . . .

"(c) *Financial responsibility in effect at time of accident*—Any person whose operating privilege has been suspended, or is about to be suspended or become subject to suspension, under this chapter shall be relieved from the effect of the judgment as prescribed in this chapter if the person files evidence satisfactory to the department that financial responsibility was in force and effect at the time of the accident resulting in the judgment and is or should be available for the satisfaction of the judgment. If insurance already obtained is not available because the insurance company has gone into receivership or bankruptcy, the person shall only be required to

present to or file with the department proper evidence that an insurance policy was in force and effect at the time of the accident."

Gibson has based his defense of the instant action upon two contentions: that the events which led to the entry of the judgment against him did not constitute a "motor vehicle accident" within the meaning of 75 Pa.C.S. §1771(a), and that he is in any event excused from liability under the terms of section 1772(c), since he had a valid insurance policy in force at the time of the accident.

It is undisputed that defendant did, in fact, have *a* vehicular insurance policy in effect at the time of the accident; it is equally unchallenged that the terms of that policy expressly exclude any coverage for damage done to property being transported on the insured vehicle, i.e., the only form of coverage that would be pertinent in the case at bar. Defendant answers this objection by declaring that "the fact that the judgment in the instant case may not be within the coverage of the policy does not mean that the defendant did not have the appropriate financial responsibility, but rather means that the judgment is not one for which the Financial Responsibility Act was intended to apply."

Aside from the sophistical nature of this reasoning, the court in *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. Bauserman,* 112 Pa. Commw. 320, 535 A.2d 700 (1988), did not concur in this view. In that case, too, the driver faced with a license suspension sought to offer proof of his coverage. The court said:

"The nature of Bauserman's proffered proof of financial responsibility was a letter from the claims manager of General Accident Insurance Company, dated December 6, 1985. The letter states that Bauserman was insured by that company at the time

of the 1978 accident. However, as noted by the department, the nature and extent of the insurance coverage in effect at that time is not detailed. The letter includes the manager's statement that, 'I have no proof or any idea what the claim for $843.54 represents so I cannot comment on coverage.' In view of that equivocal statement, *the letter does not indicate that Bauserman's insurance coverage extended to this particular judgment.* Therefore, the department did not abuse its discretion in declining to accept that letter as proof of Bauserman's financial responsibility at the time of the accident for purposes of reinstating his operating privilege." *Id.* (emphasis added)

Since in the instant case the extent coverage does not, in fact, extend to the "particular judgment" under review, we must disallow the proposition that the defendant is protected by his insurance policy from suspension by the terms of 75 Pa.C.S. §1772(c).

Indeed, if one accepts the fairly evident proposition that the purpose of this sanction of license suspension is to give offenders an added incentive to pay the judgments outstanding against them, it seems logical to contend that the sanction is especially necessary when one is dealing with damages that are not covered by insurance. An insured defendant can, in essence, leave the arrangements for the payment of a claim to his carrier, whether or not he himself continues to drive in the interim; but an uninsured defendant has to make his own settlement with the aggrieved party as best he can, for which the threat of license suspension is a potent spur.[1]

---

1. That the law was intended to act as a prod to such settlements is made clear by 75 Pa.C.S. §1775(b), which reads:

As to whether or not the events which form the basis of this action constituted a "motor vehicle accident," we must find that they did. "Accidental" is defined as "happening by chance; not planned; unanticipated."[2] No one contends that Gibson *intended* to damage the backhoe by bringing it into contact with the bridge; therefore, the inadvertent collision must be termed an "accident."

Moreover, both the truck and the backhoe which were involved fit the definition of a "motor vehicle" set forth in 75 Pa.C.S. §102: "A vehicle which is self-propelled except one which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated upon rails."

Since it is clear that there would have been no damage at all but for the operation of a motor vehicle (Gibson's truck), and since the essence of the occurrence was that a moving motor vehicle (the truck) pushed an inactive vehicle (the backhoe) against an obstruction, we see this entire episode in the same light as we would a collision between a moving and a parked car, in which the parked car happened to sustain all of the damage. The test for whether a particular mishap is, or is not, a "motor vehicle accident" does not depend upon whether a given vehicle sustains any damage, nor does it necessarily even require the involvement of more

---

"(b) *Suspension prohibited during compliance with order*—The department shall not suspend a driver's operating privilege and shall restore any operating privilege suspended following non-payment of a judgment when the judgment debtor obtains an order permitting payment of the judgment in installments and while the payment of any installment is not in default, provided that the judgment debtor furnishes proof of financial responsibility."

2. Random House Dictionary of the American Language, Unabridged (2d ed. 1987).

than one vehicle.[3] It should, rather, be measured against the question: "But for the involvement and operation of *a* motor vehicle, would the damage complained of have occurred?" Since the answer to that question in the matter at bar is clearly "no", we find that this was indeed a "motor vehicle accident" within the meaning of 75 Pa.C.S. §1771 et seq.

Accordingly, we enter the following

## ORDER

And now, July 9, 1991, the appeal of the suspension of the privileges of defendant, Barry Gibson, to operate a motor vehicle in this Commonwealth is denied.

_____

3. Although, in the instant case, there were two vehicles involved: Gibson's truck and the backhoe.